UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VICTOR L. JORDAN, SR., Plaintiff, | : | CIVIL ACTION NO. 3:10-CV-1293 (JCH) |
| v. | : | |
| JAMES MASTERSON, et al. Defendants. | : | APRIL 18, 2012 |

**RULING RE: DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 43)**

## I. INTRODUCTION

Plaintiff, Victor L. Jordan, currently incarcerated at the MacDougall-Walker Correctional Center in Suffield, Connecticut, brings this action pro se against local and federal law enforcement officials, alleging that the defendants violated his constitutional rights to be free from the use of excessive force and to receive medical attention.

Defendants Lieutenant Patrick Deely, Sergeant Michael Ponzillo, Detective Orlando Rivera, Detective David McKnight, Officer Timothy Brown, and Officer Brian Distefano, all members of the Waterbury Police Department ("Waterbury defendants"), now move for partial summary judgment.[1] Defendants argue that they are entitled to summary judgment as to Jordan's claim for the denial of medical treatment, and that defendants McKnight, Distefano, and Brown are entitled to summary judgment as to Jordan's claim of excessive force.

[1] Defendants James Masterson, Gerald Pinto, and Robert Martin, members of the United States Marshals Service Violent Crimes Fugitive Task Force, are not included in this Motion for Partial Summary Judgment.

## II. STATEMENT OF FACTS[2]

On April 16, 2008, Deely, Ponzillo, Rivera, McKnight, Distefano, and Brown were active members of the Waterbury Police Department, and Masterson, Pinto, and Martin were Task Force Officers assigned to the United States Marshals Violent Crimes Fugitive Task Force ("Task Force"). Jordan was wanted by several police departments in Connecticut on outstanding felony warrants, and the Task Force was responsible for apprehending him. In April 2008, Waterbury Police Officers and the Task Force learned that Jordan was staying at 555 Congress Avenue in Waterbury, Connecticut ("Congress Ave. premises").

During the early morning hours of April 16, 2008, the Waterbury defendants and the Task Force arrived at the Congress Ave. premises. Upon arrival at the Congress Ave. premises, McKnight, Distefano, and Brown secured an outside perimeter around the residence. Once the perimeter had been established, Keely, Ponzillo, and Rivera entered the Congress Ave. premises with the Task Force members. Jordan only alleges that excessive force was used against him in a bedroom inside the Congress Ave. residence. McKnight, Distefano, and Brown never entered the Congress Ave. residence.

Jordan was transported from the scene of the arrest to the Detective Bureau of the Waterbury Police Department. McKnight claims that, after they arrived at the police department, he wiped Jordan's face with a wet towel taken from a medical kit to remove blood stains. L.R. 56(a)(1) Stmt. ¶ 14. In addition, Rivera alleges that he took cloth

[2] Unless otherwise noted, the court relies on the undisputed facts set forth in the parties' Local Rule 56(a) Statements. Where a fact is disputed, the court views the evidence in the light most favorable to the plaintiff. In accordance with L.R. 56(a)(3), where a party denies a fact, but fails to provide a specific citation to evidence in the record to support that denial, the court may deem the fact to be admitted.

gauze from a medical kit and applied the gauze to a laceration on the back of Jordan's head. L.R. 56(a)(1) Stmt. ¶ 15. Jordan denies that any medical treatment was administered to him at the police station. See L.R. 56(a)(2) Stmt. ¶¶ 14–15. On April 17, 2008 at 10:05 a.m., Jordan was admitted to St. Mary's Hospital Emergency Room in Waterbury, Connecticut, where he received treatment for injuries classified as superficial. Presently, Jordan participates in strenuous physical workouts, including lifting weights and floor exercises.

## III. PROCEDURAL BACKGROUND

On June 6, 2011, the court transferred this matter to Magistrate Judge Holly B. Fitzsimmons. See Doc. No. 32 (now revoked). In doing so, the court mistakenly concluded that all parties had consented to jurisdiction by a Magistrate Judge. In fact, however, plaintiff, Victor L. Jordan, had not consented to jurisdiction by a Magistrate Judge. See id.

Prior to the undersigned discovering this error, Magistrate Judge Fitzsimmons issued a Ruling granting summary judgment on the defendants' Motion now pending before the court. See Doc. No. 58 (now vacated). On December 27, 2011, the court revoked the Consent to Jurisdiction and vacated Magistrate Judge Fitzsimmons's Ruling. See Doc. Nos. 59–61. Then, the court referred the present Motion to Magistrate Judge Fitzsimmons to issue a Recommended Ruling. See Doc. No. 62.

On December 27, 2011, Magistrate Judge Fitzsimmons issued a Recommended Ruling granting summary judgment on the present Motion. See Doc. No. 63. In

response, Jordan filed a Motion to Amend/Correct Judgment,[3] and an Objection to the Recommended Ruling. The court has reviewed all of the papers that have been filed with regard to the pending Motion for Partial Summary Judgment. The court renders its own opinion with regard to this Motion, without regard to Magistrate Judge Fitzsimmons's Recommended Ruling.

## IV. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine

[3] Jordan's Motion to Amend/Correct Judgment appears to be identical to his Objection to the Recommended Ruling. See Doc. Nos. 68, 69. At the time Jordan filed that Motion, no final judgment had been issued. Accordingly, the court terminates Jordan's Motion to Amend/Correct Judgment (Doc. No. 68) as moot, but looks to his Objection to the Recommended Ruling in deciding the present Motion for Partial Summary Judgment.

issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## V. DISCUSSION

### A. Medical Treatment

The Waterbury defendants contend that they did not unconstitutionally deny Jordan medical care because he did not suffer a serious medical need. The official custodian of a pretrial detainee may be liable for violating the detainee's due process rights, pursuant to the Fourteenth Amendment, where the official denies treatment needed to remedy a serious medical condition, and does so because of his deliberate indifference to that need. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). This standard encompasses both an objective and a subjective component. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). First, the plaintiff's physical condition must be, in objective terms, sufficiently serious. See id. In addition, the plaintiff must demonstrate that the charged official acted with "a sufficiently capable state of mind." See id. An official acts with deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw that inference." See id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

In determining whether a medical need is sufficiently serious to warrant a constitutional right to medical attention, the court is guided by the principles of the Eighth Amendment. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates 'a sense of urgency' that may result in 'degeneration' or 'extreme pain.'"). Bruises and lacerations do not always constitute serious medical needs. See, e.g., Dawes v. Coughlin, 1998 WL 513944, at *1 (2d Cir. June 12, 1998) (finding that a 1.5 inch laceration on plaintiff's elbow was not sufficiently serious to give rise to an Eighth Amendment claim); Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990) (finding plaintiff did not display any "serious medical needs" where he received treatment for bruises and abrasions, a sling for his left arm, and a patch for his injured eye). Where a bruise or laceration becomes infected or fails to heal properly, however, a serious medical need may exist. See Chance, 143 F.3d at 702 ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment.").

Here, Jordan was treated for two scalp lacerations, each one centimeter in length, and both of which were described as "clean" and "superficial" by the treating physician. See Defs.' Ex. L, Doc. No. 49 at 4. Using local anesthesia, the treating physician inserted a total of five staples to treat Jordan's two lacerations. See id. In addition, Jordan was diagnosed with a lower lumbar back contusion, a right mandibular contusion, and a scalp contusion. See id. The treating physician performed several

tests, including a chest exam, cardiovascular exam, CT scan, chest x-ray, abdominal x-ray, and pelvis x-ray, all of which returned as normal. See id. Jordan described his pain as a zero on a scale of zero to ten. See id. at 10. Finally, Jordan does not point to any evidence which would suggest that any of these injuries worsened after his hospital visit, or that he sought further treatment from prison medical staff.

On the basis of this evidence, Jordan fails to set forth sufficient evidence to satisfy the objective component of deliberate indifference by demonstrating a serious medical need. None of Jordan's reported injuries would allow a jury to infer that a sense of urgency existed regarding Jordan's medical condition, or that Jordan was in extreme pain. In addition, Jordan does not assert any evidence that his injuries did not heal properly, or that he required additional medical treatment. Finally, Jordan's claim that he suffered from a serious medical need is undercut by his test results, which all returned as normal. See, e.g., Jones v. United States, 2009 WL 5083401, at *7 (W.D. La. Dec. 23, 2009) ("Nor had he alleged a serious medical need, as the test results were negative for kidney problems."). Consequently, summary judgment in favor of defendants is granted as to Jordan's claim regarding medical treatment.

B. Excessive Force

Defendants also argue that summary judgment is proper as to Jordan's excessive force claim with regard to defendants McKnight, Distefano, and Brown because there is no evidence that these three defendants were present in the bedroom when Jordan alleges excessive force was used against him. See Mem. Supp. Mot. at

6–7. Jordan does not contest that McKnight, Brown, and Distefano did not enter the Congress Ave. residence. L.R. 56(a)(2) Stmt. ¶ 10.[4]

Jordan brings his excessive force claim pursuant to 42 U.S.C. § 1983. See Doc. No. 1. To recover money damages under section 1983, a plaintiff must demonstrate that each defendant was personally involved in the constitutional violation. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

The Fourth Amendment prohibits the use of excessive force in effecting an arrest. See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). In addition, an officer who is present, but does not participate in an arrest, may still be liable for failure to intervene where other officers are using excessive force. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). Here, Jordan asserts that excessive force was used against him only while he was in the bedroom of the Congress Ave. residence. See Doc. No. 43, Ex. A at 45–62; L.R. 56(a)(2) Stmt. ¶ 11. In addition, Jordan does not contest that McKnight, Distefano, and Brown were never present inside the Congress Ave. residence. See L.R. 56(a)(2) Stmt. ¶ 10; see also Doc. No. 43, Ex. H at 3, Ex. I at 4, Ex. J at 3. Consequently, Jordan fails to present evidence to raise a material issue of fact to support his claim that McKnight, Distefano, and Brown were either involved in the use of excessive force against him, or that, despite the opportunity to do so, they failed to intervene while others used excessive force against him. As a result, summary judgment is granted as to McKnight, Distefano, and Brown with regard to Jordan's excessive force claim.

[4] See supra n. 2.

## VI. CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment (Doc. No. 43) is **granted**. In addition, Jordan's Motion to Amend/Correct Judgment (Doc. No. 68) and Magistrate Judge Fitzsimmons's Recommended Ruling (Doc. No. 63) are **terminated as moot**. The Clerk is directed to terminate defendants McKnight, Distefano, and Brown as parties in this case. The case will go forward on the excessive force claim against the Task Force defendants and Waterbury defendants Deely, Ponzillo, and Rivera.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of April, 2012.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge